IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICHARD EDWARDS, individually and on behalf of all similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> ALL-DRY, INC., and ALAN CHANDLER and NICK CHANDLER, individually, <br><br> Defendants. | Civil No.: 3:17-cv-01313 <br><br> JUDGE CAMPBELL/NEWBERN <br><br> COLLECTIVE ACTION COMPLAINT FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938 <br><br> JURY DEMAND |

## DECLARATION OF MARTIN HOLMES

I, MARTIN HOLMES, do hereby state and affirm as follows:

1. I am the lead attorney representing the named representative Plaintiff and Opt-In Plaintiffs (hereinafter referred to collectively as "Plaintiffs"), and the attorney primarily responsible for the prosecution of this action since its inception in September 2017. I have personal knowledge of the information set forth in this Declaration, which I submit in support of the parties' Joint Motion for Approval of FLSA Settlement, and the Memorandum of Law filed in support thereof. I will provide additional information as may be requested by the Court.

### EXPERIENCE AND BACKGROUND

2. I am an equity member in the law firm of Dickinson Wright PLLC ("DW"). I am a duly licensed attorney and have been a member of the Tennessee State Bar since 1986. I am licensed to practice before all Tennessee state courts, as well as the United States federal district courts in Tennessee, the United States Sixth Circuit Court of Appeals and the United States Supreme Court.

3. DW is a full-service law firm with an international practice, having approximately 500 attorneys located in Arizona, California, Florida, Kentucky, Michigan, Nevada, Ohio, Tennessee, Texas, Washington, D.C., and Toronto, Canada.

4. I am a member in good standing with the American Bar Association, and an active member of the Class Action and Derivative Suits Committee of the ABA Section of Litigation. I am also a member of the Federal Bar Association (Secretary and Executive Board Member – Nashville Chapter), Tennessee Bar Association and Nashville Bar Association.

5. I have devoted virtually my entire legal career to litigation and appellate practice. I have successfully litigated a broad variety of complex federal and state civil litigation matters during my professional career, including many class and/or collective actions.

6. Since the late 1990s, I have been heavily involved in class and/or collective action litigation involving consumer law, product liability, wage/hour, employment discrimination and antitrust cases. During this time period, I have engaged in and focused on a nationwide class action and/or collective action practice, having served or continuing to serve as lead or co-lead counsel in numerous class and/or collective action cases, including several of the nation's largest wage/hour class and/or collective action cases seeking overtime wages on behalf of plaintiffs. Some notable class and/or collective actions I have litigated include:

a. *Cole v. Long John Silver's* (one of the first, if not the first, arbitral overtime class action certified under the American Arbitration Association class action rules involving approximately 5,000 managers and assistant managers across the country, resulting in $43 million dollar award);

b. *Belcher v. Shoney's, Inc.* (three separate multi-state class/collective actions seeking overtime compensation on behalf of hourly-paid and exempt-classified employees of Shoney's restaurant chains, resulting in $18 million dollar recovery, then the largest known recovery on behalf of workers in the history of the FLSA);

2

c. *Meadows v. Krystal Company* and *Brinkley v. Krystal Company* (collective actions seeking overtime compensation on behalf of a multi-state class of hourly-paid employees, resulting in a $13.84 million dollar recovery);

d. *Walker v. Ryan's Family Steak Houses, Inc.* (Collective action under FLSA on behalf of hourly restaurant workers in which the court denied defendant's motion to compel arbitration, resulting in a $13.5 million recovery);

e. *Jobe v. TRW, Inc.* (Collective action seeking overtime compensation on behalf of 873 hourly-paid factory workers, resulting in $1.6 million dollar recovery);

f. *Krech v. Efunds* (Federal court class action representing approximately 120,000 class members for alleged violations of the Fair Credit Reporting Act resulting in a $3.3 million dollar recovery);

g. *In re Polyurethane Foam Antitrust Litigation* (Federal court multi-district litigation and part of multi-firm litigation team representing the indirect purchaser class resulting in a $150 million dollar recovery); and

h. *Lykins v. First Acceptance Corporation* (Federal court collective action seeking overtime compensation under the FLSA on behalf of 233 insurance agents resulting in a $3.2 million dollar recovery);

7. I also recently tried a wage and hour collective action in Knoxville, Tennessee. Pierce, et al. v. Wyndham Vacation Resorts, Inc., et al., (Case No.: 3:13-cv-641-CS). The case was tried before Magistrate Judge Clifford Shirley in the United States District Court for the Eastern District of Tennessee. The case was tried for approximately three weeks resulting in a very favorable Memorandum Opinion dated January 29, 2018 granting judgment in favor of all Plaintiffs for approximately $5 million dollars. The case is now on appeal.

## RECOMMENDATION OF COUNSEL

8. Attached hereto as Exhibit A to this declaration is the Settlement Agreement entered into by the parties. Based on my own investigation and evaluation, I am of the opinion that the Settlement Agreement is fair, reasonable, adequate, and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay and the

3

Case 3:17-cv-01313   Document 37   Filed 03/15/19   Page 3 of 10 PageID #: 191

numerous defenses and potential appellate issues the parties are asserting. In fact, I am extremely satisfied with the results of the case, the settlement and ultimate results for the Class Members.

9. I am very confident that meaningful investigation was conducted. Class Counsel carefully investigated this case before filing it. In addition, the Parties had very open informal discussions regarding the case during mediation. As a result, the Parties had a clear view of the strengths and weaknesses of their case.

10. The settlement reached between the Parties was the product of extensive, hard-fought, and adversarial negotiations between the Parties. In order to reach a consensual resolution of this case many difficult legal and factual issues were discussed and resolved between the Parties. The negotiations were conducted at arms-length and were free of collusion. The Parties on both sides were represented by experienced employment attorneys with specialized knowledge of both class actions and wage and hour law.

11. The Settlement Agreement obtained in this case required that the Parties make reasonable compromises in light of the facts, issues, and risks presented by this Action. In particular, in agreeing to the Settlement Agreement, Class Counsel considered the defenses being presented by Defendants. Class Counsel considered the risk that the limitations period may have been shortened to two years. Furthermore, Defendants asserted that the Opt-Ins were already paid in full for any amounts owed to them for overtime wages, and had signed declarations affirming this payment. Class Counsel also had to consider the fact that Defendants submitted an offer of judgment early in the case, which could have allowed the Defendants to seek to recover costs from the Plaintiffs in the event Plaintiffs did not prevail at trial, or a judgment was less than the amount of the offer amount. Class Counsel also considered the likely length of continued

4

proceedings necessary to continue the litigation against Defendants through trial and through any possible appeals, as well as the uncertainty, the risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation. Frankly, it could take years and cost hundreds of thousands of dollars to reach a final resolution of this case if it were not settled, but went through the legal process (including appeals). Defendants also took the position that it was a small company with limited resources, and that Defendants were unable to pay a large verdict in this case. While Class Counsel felt very good about Plaintiffs' legal position in this case and felt strongly that Plaintiffs and the Class Members would prevail, Class Counsel is experienced enough to realize there were substantial risks in going forward. On the other hand, the terms of the Settlement Agreement provide all of the Class Members with significant and fair compensation for their losses. Accordingly, it was determined by Class Counsel that a settlement at this juncture was in the best interests of the Class.

12. In light of the amount of time that Class Counsel has invested in prosecuting this case, we have significant knowledge of Defendants' payroll practices and have a clear view of the strengths and weaknesses of the case. Based on my knowledge of the facts in this case and based on my prior experience and education, I believe this settlement is fair, reasonable and adequate in light of the factual and procedural posture of this case.

13. Each Plaintiff will receive a share of the settlement. Each Plaintiffs' share of the settlement was calculated based on the number of workweeks he worked as an installer or technician during the Recovery Periods. Based on Plaintiffs' testimony, and the amount of liquidated damages added to the settlement amounts paid to each Plaintiff, each Plaintiff will receive 113% of the wages they would have received had they been paid at time and one half while employed for all hours worked over 40 in each workweek.

5

Case 3:17-cv-01313   Document 37   Filed 03/15/19   Page 5 of 10 PageID #: 193

14. The individual distribution amounts are included in the Settlement Agreement. Class Counsel has already spoken with all three of the Plaintiffs, and all have expressed they are pleased with the terms of the Settlement.

15. Given the disputed issues in this case, it is my opinion and belief based on years of wage and hour litigation that that this recovery is not only beneficial, and fair and reasonable; but a favorable outcome.

16. In addition, the settlement is significant and substantial given Defendants' vigorous defense of this matter. First, Defendants submitted an offer of judgment early in the case, which could have allowed the Defendants to seek to recover costs from the Plaintiffs in the event Plaintiffs did not prevail at trial, or a judgment was less than the offer amount. Second, Defendants argued that at a minimum, there was no willful violation of the FLSA and they acted on a good-faith basis. Third, Defendants argued that Plaintiffs were only not paid overtime for a very short amount of time during the Recovery Periods. Thus, Defendants insisted that even if there was a violation, Plaintiffs would be entitled to damages for a very brief period of time, and that any damages awarded should not be liquidated, or doubled. Finally, Class Counsel considered the financial condition of the Defendants. Defendants maintained that if a larger verdict was entered against Defendants that Defendants would not have an ability to pay and may result in a worse result for the Plaintiffs.

17. On February 14, 2019, the Parties and their counsel participated in a judicial settlement conference before Magistrate Judge Joe Brown. With the assistance of Judge Brown, the Parties were able to agree to a settlement during the conference.

18. The agreed-to settlement amount contemplates a payment to the Plaintiffs in the amount of $40,000.00, inclusive of attorney's fees. From this amount, the Plaintiffs will receive

a collective award of $13,000.00. Half of the amount paid to each Plaintiff is being distributed based on the estimated total amount of uncompensated overtime hours each Plaintiff worked during the Recovery Periods, with the remaining half representing an amount for liquidated damages (i.e. double the amount of overtime compensation calculated).

## ATTORNEY FEES AND COSTS

19. Class Counsel has spent significant time and resources investigating this case, reviewing Defendants' documents and policies and interviewing witnesses in order to get a firm grasp on the liability and other issues in this case.

20. Class Counsel has spent a significant amount of time drafting the Complaint, Interrogatories and Requests to Produce Documents, Plaintiffs' Motion for Conditional Certification, reviewing Defendant's Response to the Motion and drafting a Reply thereto. In addition, significant time was spent reviewing and analyzing the inadequate pay records provided by Defendants and compiling data to determine the amounts owed to Plaintiffs.

21. Over the past year and a half, DW has actively litigated this case. To date, DW has expended approximately one hundred fifty (150) hours of attorney time on this case without any form of payment whatsoever, and receipt of any fee was wholly contingent upon the result achieved. Had DW charged on an hourly basis, DW's attorney's fees to date would exceed $65,000.00. DW has agreed to cut its fee to less than half that amount in order to facilitate settlement of this case.

22. The work I personally performed, and the work of other attorneys, paralegals and staff on behalf of Plaintiffs and the Opt-In Plaintiffs was necessary to effectively and properly represent them. This work included, but was not limited to: vetting the case and researching FLSA case law; drafting and editing the Complaint and Amended Complaint; drafting discovery;

7

motion practice; extensive interviews of witnesses, which included Plaintiffs and the Opt-In Plaintiffs; the review of documents and information regarding Plaintiffs and the Opt-In Plaintiffs to determine their potential claims for overtime pay; preparation and attendance of the evidentiary hearing; preparation for and attendance at mediation; the negotiation of a settlement; and the preparation and drafting of settlement paperwork.

23. DW's current fees are limited to work performed through February 14, 2019, which excludes any time that Plaintiffs' counsel and staff will expend administering the distribution of settlement proceeds to the Plaintiffs and Opt-In Plaintiffs, including execution of documents, and distribution of the settlement proceeds.

24. Based on the standard rates for the attorneys working on this case, the attorney's fees in this case should total over $65,000.00. Class Counsel, however, has agreed to reduce its fees to $27,000.00 in order to get the case settled. Based on the extensive experience that I and other Class Counsel possess in all aspects of employment litigation, but in particular, wage and hour class actions, I submit that the requested fee is reasonable under the circumstances and supported by prior awards in this jurisdiction and other jurisdiction.

25. In addition, DW advanced out-of-pocket expenses in prosecuting this case totaling $1,414.88. While all of these expenses were both reasonable and necessary, Class Counsel has voluntarily agreed not to seek reimbursement of these expenses from Plaintiffs, and will pay these expenses from the $27,000.00 Class Counsel has agreed to accept.

## **CONCLUSION**

26. Based on the foregoing, it is my opinion that the Court should approve the settlement, incentive awards to the Representative Plaintiffs, and the fees and costs sought by counsel for Plaintiffs and the Opt-In Plaintiffs.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, under the laws of the State of Tennessee, that the foregoing is true and correct to the best of my knowledge and information.

Executed this 14th day of March, 2019, at Nashville, Tennessee.

_____
MARTIN D. HOLMES
CLASS COUNSEL

9

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of March, 2019, a true and exact copy of the foregoing *Declaration of Martin Holmes* has been served on the following individuals consenting to electronic service by operation of the Court's electronic filing system:

Kerry Knox
117 South Academy Street
Murfreesboro, TN 37130
Telephone: (615) 896-1000
E-mail:kek@castelliknox.com

Thomas B. Luck
200 Nashboro Blvd.
Nashville, TN 37217
Telephone: (615) 885-9699
thomasluckattorney@gmail.com

                                                s/ Martin D. Holmes
                                                  Martin D. Holmes

NASHVILLE 75736-1 681061v1

10

Case 3:17-cv-01313  Document 37  Filed 03/15/19  Page 10 of 10 PageID #: 198